Clerk will call the case Okay, if counsel who are going to argue would approach microphone Let us know who you are both sides Good morning, if you don't like each other that much Stand next to each other Good working relationship Alan Martin for Plaintiff Appellant Ryerson Good morning, Your Honor Michael Merrick on behalf of the Defendant Travelers Okay, the typical rules will apply 15 minutes for each side Save some time for rebuttal If we unduly harass you with questions We might give you a little extra time Because we don't have a case coming after you But that's the general rules Keep your voice up That's more for recording Than for the hearing We have amplification So help everybody hear what you are saying Thank you, Your Honor Thank you, Your Honor Justice Smith Oh, I should mention that our colleague Justice Smith is not here Because of a medical situation In his family He is very familiar with the facts The briefs, the record, the law And will listen to the oral arguments Before a decision is rendered Okay Thank you Mr. Merrick Good morning, Your Honors Again, Alan Martin for Plaintiff Appellant Ryerson May it please the Court Since Your Honors have read everything I'm going to try to jump right into the substance And I'll begin with the Champagne case Which is a duty to defend case Okay That was a case brought in Oklahoma Federal Court Under the Notice Pleading Standard The allegations in the complaint Included And the claims included An Oklahoma state law claim for interference With business and contractual relations The notice allegations Included that Ryerson Expressed disapproval to certain mills Of any intent, plan Or consideration to add Champagne as a distributor And then also even to sell Aluminum to Champagne With, as we noted in the brief Disapproval in McMillan's and Webster's Being a synonym For disparagement Criticizing and bashing It went on To also say that The affected business was business and contractual Relationships with OEM's Original equipment manufacturers Other customers and aluminum mills That Champagne has been injured It has lost business And customers quote Determined not to purchase aluminum products From Champagne metals because of Defendant's conduct Since it's notice pleading Then obviously you go into discovery And more information is developed And in depositions Examples that were given, these are included In a summary judgment decision That was granted on behalf of all Defendants against Champagne by the Shots being taken at Champagne By Ryerson and other defendants And when asked what it was Give examples of what these shots Were that were taken by Ryerson And other defendants That they couldn't do the business And if they gave us the business we would fail It was done with both suppliers And with customers Basically saying incapable Incompetent, unable to service the business Was there an issue in this case in terms of The timeliness of the notice to the Your honor, it was provided timely What about Is it true that in order to get coverage For what you're claiming here The claim would have to Prove injury arising Out of a statement that disparaged Its goods, products or services And that's what they're saying And that's what the allegations are That's why you bring a commercial disparagement claim In Oklahoma Tortious interference is synonymous With a business disparagement claim And we cited the cases both In the district court and the 10th circuit That it is disparagement And it really goes hand in hand As the law developed with unfair competition That you're going to be disparaging Your competitor And your competitor is going to claim That's unfair and we've been improperly disparaged And that's what was being asserted Against Ryerson But what about your colleague who says That it's inappropriate for the court Below or us To rely on these disparaging statements That are not listed in the complaint They are, they're attached as exhibits And they were admitted by travelers We cited the record They're incorporated under BAWA And we cited the cases to your honor Boswell v. Metro Life Insurance Which is an Illinois Supreme Court case Any document attached to the pleading Will be treated as part of the pleading And Dorrit Township Exhibits attached to the claim Become part of pleadings And they were actually specifically admitted But if there was no response They're deemed admitted under the law So they were part of the pleadings And they were part of the motion for judgment On the pleadings And as I said, Oklahoma law It's the case we cited Yosef Kohima That this is viewed in Under Oklahoma law Interference with business and contractual relationships To be a business disparagement case In the case of the underlying circuit court The circuit court Contrary to Illinois law, respectfully Did a very restrictive reading And only read The antitrust claims There's nothing in the underlying court decision That even references the state court Tortious interference claim Provides any analysis of the state court Tortious interference claim And strictly, strictly and restrictively Focuses on antitrust Cites two federal Seven circuit decisions That involve neither insurance Duty of that have nothing to do with it And comes to the conclusion Quote, an antitrust claim Is conceptually inconsistent With a disparagement claim And your honors, if you look at the case law The converse is true Because disparagement, commercial disparagement Is an outgrowth of unfair Competition claims These kinds of claims go all together Hand in hand And when you do look At seven circuit decisions That involve both antitrust And tortious interference claims So you have them both together in a complaint The seven circuit has found a duty to defend Under the tortious interference We cited Curtis Universal v. Sheboygan Which is a seven circuit case And it says Nor is the insurer allowed to escape from his duties Of defense and indemnification By reference to core or dominant character Of the plaintiff's allegations That would violate the principle That if any conduct alleged in the complaint Falls within the scope of the insurance Company of policy The insurer must defend Also cited Cincinnati insurance Another seven circuit case Involves tortious interference Where merely the allegation of concern Over Mr. Schumachie's The plaintiff's character Was sufficient to trigger a duty to defend And then a country mutual decision Of this court made very clear That you don't have to plead A separate cause of action And separate elements of a cause of action That the test is whether there is any Allegation at least Suggesting potential coverage I think we have very explicit allegations here To give rise to the possibility And potential coverage As we've set out Again In the seven circuit cases That involve competitors Involve tortious interference Type cases The court in Cincinnati and University say what is important Is not the legal label That's attached to the claim But whether that conduct As alleged in the complaint Is at least arguably Within one or more categories of wrongdoing Which a policy covers And we certainly have that here Two of the leading cases And there's a third But the facts don't apply here Are Phelan and Country Mutual And they both apply The same basic standard And there's language Used interchangeably Lexmark Whether a statement is false or misleading Lexmark uses words that Criticize and quote unquote Negative or misleading Negative or misleading About a competitor's goods and services Made or that tended to influence A competitor's purchases Not to buy goods or services When the circuit court's decision Addressed these In each instance It tried to distinguish them By saying in Phelan The statements were made to the public In Country Mutual The statements were made to the public Phelan contains a specific section Adopted by Country Mutual Where it's not in the policy Basically publication Under common understood It's in Black's Law Dictionary Is when you convey it to a third party And because personal injury Is different from advertising injury Advertising injury means you broadcast it Broadly Personal injury by its very nature Is going to be an oral communication To a third party And that's exactly what we have here That's the only way you're going to get this coverage Is when you're communicating it orally to third parties And here we have very clearly These disparaging statements Were made to customers and to suppliers And in fact The circuit court recognized It's in its pin-in That negative statements That it is alleged in the complaint Negative statements were made by Ryerson to suppliers That's another key issue Because the cases as considered In Illinois Are in the context of customers But the coverage is not specific to customers It applies to statements made to anybody So it would include suppliers And in this case It's clear that these same allegations It's expressed The circuit court recognizes it in its own opinion There were negative disparaging statements Made to suppliers And that triggers the duty to fund separately from customers Alright, what about Hoffman? Hoffman Give me one moment To shuffle through here, your honor We believe that the trial court erred In dismissing the claims I'll start with the consumer fraud claim That really wasn't an amended claim That was a first-time claim Based on information that was obtained As a result of another suit Involving travelers With another insurer Where travelers' claims had stepped in the shoes of Ryerson And was able to claim for Ryerson So we, being Ryerson Were dragged into the suit We received discovery And we learned of the deceit That happened with travelers During the course of the underlying case And so in 2012 There was a jury verdict And travelers had the primary limit Which was $2 million There was an excess limit with AIG Travelers repeatedly represented And concealed from Ryerson That it had committed its $2 million To AIG And didn't divulge And really it had not And it had told AIG the reason That it was hanging on to this defense And trying to maintain control of the defense Was because it had a big book of agency business So it was basically putting Its other financial interests And its other business ahead of Ryerson Never disclosed this And you can see from the communications that we provided We sought confirmation AIG tried to raise Because AIG, this was unknown to Ryerson Until these documents were produced Later in the case But AIG repeatedly requested That travelers put up its limits And travelers refused to do it And then misled Ryerson in saying AIG is the obstruction AIG is not taking our limits They want us to pay for the defense And they get to pick the counsel and control it And we've laid those communications out We've told them we've got AIG Because finally we were able to get a meeting Face-to-face with the AIG claims handler Senior official from Ryerson And they said no It's travelers, they haven't provided their limits Immediately after that Travelers didn't show up face-to-face But the call also was made To travelers to get We've got AIG saying it's you And they again denied it and said that they committed And had their two million up So they misled Ryerson Ryerson is spending money to have independent counsel there We laid it out There was an emergency motion That had to have been denied to stay execution Ryerson's assets Immediately would have been subject To attachment Bank accounts and what have you The plaintiffs could have done immediately It didn't happen but the risk was there So if you're Ryerson And you're the CEO and CFO of Ryerson You need to take steps  They hired consultants about seeking How they could get a letter of credit They looked into trying to get their own bond But the bond would be over 20 million dollars Which was the amount of your judgment So you effectively lose You don't get a defense You don't get any protection from your carriers And the interesting thing is We cited this in our session You had the protection of the 25 million From the excess of AIG That certainly came in handy, didn't it? AIG didn't initially put that up either Initially, whatever They're potentially on the hook Because they're the excess carrier For Illinois National, right? But if they did not put up their policy In lieu of a bond We then would have been subject To immediate attachment And AIG post-verdict Tried to issue a reservation of rights After the verdict So we had an issue ongoing with AIG To say, we need you to remove that Ultimately, what happened with the bond? Who put up the bond? At the last second Both travelers and AIG came in They had sworn affidavits Of their senior officials And their senior official says Our policies cover the entirety of the amount And it was a 27 million dollar judgment Then there's post-judgment interest And from the judgment date interest And all that You have to do one and a half times That 37 million was the final figure And they admitted that their policies This is at the last moment Admitted that their policies provided coverage But this is while Ryerson had Ongoing debt refinancing in New York It was looking at having to restate those But you had coverage counsel Look at it, right? In order to determine what the AIG policy was And what they would be on the hook for Or maybe not on the hook for But we were pressing them If our assets were attached I asked you whether or not you hired coverage counsel I was coverage counsel for Ryerson That's what's supposed to happen, right? Well, there was never a reservation of rights Prior to trial, it shouldn't be going through that They should have told us right away That they would put up their policies That's their obligation There was no reservation prior to a jury verdict By any carrier So at that point had they simply said We're putting up our policies We're admitting our coverage And we're going to put them up in lieu of a bond We would have been protected We wouldn't have to go through this entire ordeal I have a question for you The underlying case There were two people hurt Mother and daughter In a car hit by the semi And this big verdict Comes down, how much was it? Twenty-seven million Twenty-seven million dollars And the case goes up on appeal And what aspect of damages Was challenged on appeal? I don't know, your honor I think The 800 for the kid What about the rest of the money Your honor is much more familiar with the underlying case than I am Well It's not a published opinion But you can get it I have read it My point is only this The issue that went up Forgetting the amount that was awarded To the minor, some 800,000 dollars A fraction of what was Awarded here The only issue on Appeal was whether or not This defendant or that defendant Was an agent and a parent agent Part of a joint venture And it had nothing to do with all of the Money that was Given to the Main injured person, the mother That's my understanding that the real issue Was a legal issue over agency Because in this instance As I understand it, Ryerson had Already Its steel coils had been delivered This person was on the way back And was an independent trucking company So the whole issue was whether Illinois law would recognize This trucker and the trucking brokerage Service to be an agent That was my understanding your honor And isn't it also Accurate that the What was I going to say Go ahead I just lost my train of thought there I have a question If we did what you want us to do We would be saying For everybody after you Yep, if your insurance companies Are squabbling and can't resolve their issues And you have to get your own lawyer To knock their heads together Your insurance companies have to pay for your lawyer Yes, but Your honor, the difference here is There wasn't a reservation of rights Prior to verdict So there shouldn't have been any need By either of the insurance companies Neither one, until there was a verdict Somebody could hit with a verdict And now there's this backtracking Now Travers is telling us It's tendered and committed its limits And it's AIG But that was a lie, that was not true And so here we are, not knowing AIG is trying to issue A post-verdict Reservation of rights And our understanding, it's in our correspondence We wrote to AIG and we said We've got Travers, they told us, we've got the two million So we in essence, because now We're exposed Because we don't know AIG is trying to deny coverage Or at least raise reservations As to coverage Is this our money or is this your money So we had to take steps to protect ourselves So that's a serious issue And the Travers told us that they had committed Not committed So it's the misrepresentation by Travers As well as the sort of Delaying tactics That they were using Squabbling over who was what lawyer to pick That you're really concerned about It is, because we would AIG is allowed Not to put up its policy In lieu of a bond until it has Travers money We're proceeding under the Understanding they have the money And AIG is the problem And that wasn't the case, so then we could have really also Focused on AIG because then It had the money And it really was AIG But AIG turns around and says they're lying to you And so we've got two of them And Travers again, there's a call Right after a face-to-face meeting And says, no, our money's committed We're there Alright, the question I had in my head that Escaped the jurisdiction was related To the agency claims Those were tested at trial By the submission of special Interrogatories by the defendants, right? I believe that is true And the jury answered them in a manner that was Favorable to the plaintiff on the agency issue And against the defendants That I believe is accurate Nevertheless, the only issue that they're really fighting about On appeal was whether or not They should be legally held agents As I understand it There were prior Illinois cases That in that context said it would not Be an agent, and then subsequently There were some decisions that Created some doubt, so there was This issue as to what Illinois law really said On that agency issue. I mean, the way it was Explained to me, just to put it in basic terms Is if one of us sends a package By Federal Express, and we use Federal Express regularly And we get some break because we use Federal Express and not UPS And on the way back, the Federal Express driver Crashes into somebody That Federal Express driver could be Viewed as our agent. That was The argument in a nutshell as I heard it All right, thank you Anyway, we believe We pled the elements For the consumer fraud. Judge Garcia Focused on there Not being reliance. We actually Did plead reliance. It's in our pleadings But reliance is not an element Of a consumer fraud claim The Illinois Supreme Court Decisions are clear On it, conic Forgetting the other one, it escapes me for a moment Just one of those Moments. It happens But anyway, it's very clear That there's no reliance factor So Judge Garcia was Focusing on that. And we asked him After we heard what he had to say so we could Consider this at the hearing Could we have leave to re-plead. This is the first time We pled that claim based on the new information We obtained. And he denied Our ability to seek leave to amend And as we said in our case The Illinois case law is very clear about The liberal ability for a party To be able to amend its pleading So we believe that that was an error To one, decide it based on there being no Reliance which is no element Which we believe we pled But then asking that once we heard from Judge Garcia Could we have an opportunity to re-plead And re-plead our other claims And we were not allowed to do that On Hoffman's section 155 One of the interesting things That we put in there Is travelers, the same travelers In the Pennsylvania case Where its roles were reversed It was sitting in AIG's position And it was the umbrella carrier With the big 25 million limit And there was another primary carrier With 2 million in limit And basically argued that Because it didn't tender its 2 million That was bad faith And travelers brought a bad faith claim Against the primary carrier In exactly the reverse roles When it was the excess That's why you're given a round mouth So you can talk out of both sides It happens all the time It's happening right now in Washington I actually Use both corners of the mouth In some of the correspondence to the carriers That actually is a quote Of some language that I did use Alright So We believe that also pled Because the deceit And the same things that we're talking about Properly pled section 155 For the Hoffman claim So that shouldn't have been dismissed And Judge Garcia said That was another issue on which we had A good claim And said the law was unclear And we ought to take it up And get better advices From the appellate court The other issue Is breach of contract For the duty offender Which kind of takes us back Where we were just a bit ago But when Nandorf And the cases that we cited This court's Nandorf case Is an insurance company has a fiduciary When they assign counsel To the policy holder and the insurance company But this court has recognized That in reality when the insurance company Assigns an attorney It's going to have a bent and a bias Toward the insurance company Who is sending it cases And in Nandorf, moderate counsel Was provided and reimbursed Independent counsel We had to have Mayor Brown Who was sitting there with Travelers Counsel Coordinating in the courtroom During that emergency extension And during various other steps To try to keep Ryerson protected And they had undisclosed conflict They were acting And they had not tendered their limits They were telling us they were committed They were telling us they were tendered They were conceding the fact that AIG Had requested them multiple times To tender it and they hadn't And so they were completely deceiving us And at that point in time The fact that way later From February all the way to November They finally Post their limits Finally provide an affidavit Swearing there was full coverage There wasn't ever a reservation All this time leaving Ryerson hanging To have to get coverage counsel To have to get independent counsel To have to pay for advisors and consultants On its debt refinancing That is now being adversely affected in New York It's a series of damage that could have all been avoided Had it just honored its obligation And said We didn't issue a reservation of rights It's a $27 million judgment They talk about oh we all have a common interest Well they point that AIG Also had a common interest on this agency issue Well AIG had the $25 million Put up your $2 million AIG would allow counsel also To participate And avoid this issue That both policies are going up It's going to cover and Ryerson's not going to sit there exposed And on threat on an emergency motion That had that motion been denied Immediately Ryerson's assets Could have started to be attached Frozen and seized Would have been a nightmare scenario The last item was Section 155 for Hoffman Champagne And in that instance the denial occurred On June 28th 2004 Judge Garcia wasn't interested in any conduct By travelers afterwards Even though we argued it could continue And in fact did continue During the course of the case We would even argue in these proceedings It continued by arguing A second tender Was a late notice when they knew There was a timely tender Their denial letter makes no reference to there being a late notice It copies Willis Caroon Which was the actual travelers producer Who received the original copy of the complaint And refers to Ann Which was a second sending That's another instance of vexation on reasonable conduct And under the Wausau decision Supreme Court And this court's LaGrange hospital decision Sure has two choices When it has a complaint Against its insured Defend under a reservation of rights Or file a prompt declaratory action Travelers did neither And consistent also Country Mutual says it's a breach When you breach It's a estoppel deny Breach of duty offend And as a result Estoppel applies And in the Wausau decision This argument that now They're trying to throw in First time on appeal Late notice Is not Wausau is express Explicit That notice is not a defense That notice is not an excuse So legally it's wrong Factually it's wrong Thank you Your honor Mr. Merrick Again your honors  Travelers property Casualty company of America The circuit's courts Got it right when they ruled in favor of Travelers in both of the underlying cases Judge Mitchell got it right When he granted summary judgment in favor of Travelers as to Champaign And Judge Garcia got it right when he Granted Travelers motion to dismiss as to Hoffman Ryerson's arguments Lack merit for many reasons Its positions are based on a Misreading of Illinois law And in many instances Clear misstatements of the record Let's start with Champaign If we can Nearly two decades ago The Champaign antitrust conspiracy suit Was brought against Ryerson and against Other co-conspirators After some time and delay Ryerson tendered the complaint to Travelers How much time and delay It was twenty It was just over two years your honor From the time the case was filed By letter of June 28th 2004 Travelers denied coverage And significantly And this language is very important Toward the end At page C 1369 It said as follows to Ryerson If you have any additional information That you believe would support coverage For this matter Travelers request That you provide it Moreover if the allegations should change Please provide that documentation to Travelers So that we may consider Their effect on coverage Yet at no time did Ryerson Provide any other information to Travelers The very next time Travelers heard anything About the Champaign case Was nine years 364 days later When it filed suit in this court And it was only then at that time In 2014 that Ryerson Expressed that there was somehow Meaning to be derived from the isolated Word disapproval In the complaint and that somehow That was synonymous with Disparagement Now before turning to The arguments on the merits Let me make a point about this whole Four corners eight corners extrinsic evidence Point that Ryerson makes Several points First the law in Illinois is Eight corners depends on how you count them You count the four corners of the complaint Four corners of the policy Or otherwise An insurer's duty to defend Has long been held to be determined Based on a four corners basis That's general agents, that's outboard marines Your honors are well familiar With the case Now while an insurer must also Take into account things known to it Outside the four corners Of the complaint Travelers had no duty under Illinois law To conduct an independent investigation To determine whether there was In fact anything else beyond The complaint tendered to it That might trigger a duty to defend The case is constant products We cited in our papers Third the facts known to the insurer Exception Which they rely upon They say derives from Pekin v. Wilson And the Holabird root case In both of those instances The court said as a limited Exception If on the pleadings in the underlying case Coverage was implicated It might implicate a duty to defend Pekin v. Wilson involved An intentional act case With a counterclaim Alleging self-defense The court said how else could we get to those facts Where self-defense was an exception To the intentional act exclusion If not looking at the response of pleading So they found that that was an unusual circumstance Which would trigger a duty to defend When you went beyond the complaint You went to the response of pleading The counterclaim and the affirmative defenses Same with the Holabird case It was an additional insured tender And the question was How could we determine whether or not The scope of the work was within the Policy to which Was the subcontractor's policy And in that instance they looked at a third party complaint Again, pleadings in the case Here, there are no pleadings That were ever tendered to Travelers at any time Except for the original complaint Back in 2004 Now, Ryerson Misrepresents the record And this is very important It suggests that travelers had in its possession The deposition Testimony and what have you That it relies upon Now, outside the four corners of the complaint It says that it admitted in its pleading That it had that material At all times relevant To the determination of duty to defend That's false Travelers answer I look and they say this In their reply brief Look at travelers answer Paragraph 77 to 80 And the record citations are 6821 Through 6822 They admitted We admitted only That the documents speak for themselves There's no temporal Admission just that Dep transcripts are dep transcripts They speak for themselves So for him, for Mr. Mockett To suggest that in some fashion Travelers has conceded possession of material Beyond the complaint at any time Relevant to its duty to defend Is simply not true Now Even if travelers had gone Looking, you know, beyond the complaint Let's say it took this antitrust Were they attached to the complaint as In this case In this case So after all is said and done After the underlying case No, absolutely not No, absolutely not Think about it this way Justice Lavin This was an antitrust conspiracy case There's a protective order in place over the case All this stuff was secreted And I have with me The docket statement off a pacer It's a publicly filed document If you're at all interested We can provide this We ran it off in preparation for today But I'll represent to this court That all the materials That they would like your honors To consider outside the four quarters Of the complaint The depths and so on and so forth Which have opinions of unfavorable material Were filed under seal in that action Okay And they were filed on April 12, 2004 Which by the way Think about it That was material in Ryerson's possession At the time it tendered the complaint To travelers but it didn't give it to them And even in response to the question Can you give us anything else that might Explain to us why you're seeking coverage For this antitrust conspiracy case They remained silent For just one day shy of ten years So the documents Which they now would like you to consider Were filed under seal On April 12, 2004 And the docket entries from the Federal court case in Oklahoma Are 192, 191 192, 193 And 194 That's where they are They were never in traveler's possession Until the complaint in this action was filed And that is not what determines The duty to defend It's what they had in their possession At the time There's no reason Here to depart from established Duty to defend principles Under the facts That we have before us Now let's turn to the merits Okay There are two things that need to be shown From the four corners Of the Champagne complaint Before there would be a duty to defend One, there needs to be disparagement And two, there must be an allegation Of damages because of disparagement Both must be met That's what the traveler's policy says Neither are present here Let's look at disparagement Disparagement has acquired A legal meaning in insurance law In this state We don't need to look Nor should we look To claims of tortious interference In Oklahoma And whether or not there could be Disparaging statements As part of a claim for tortious interference And we've explained this in our brief The two are not synonymous Tortious interference is not the same as disparagement That's not to say that if somebody is engaged In a tortious interference They can't also disparage somebody They are not one and the same As Mr. Martin would suggest But here in this state And this is what matters for purposes of the Case before your honors Is as a matter of insurance law Disparagement has an acquired meaning It's not what online dictionaries say It's not synonyms But rather it's the three part test That comes from Lexmark That's the decision of Justice Wilson In 2001 And it's the three part test that I think you were referring to before One A statement about a competitor's goods and services Two Which is untrue or misleading Not negative You recall Mr. Martin said Negative statements are enough No, it must be about an untrue or misleading statement And the third element Is that the statement must have been made To influence or tend to influence the public Not to buy those services Now It's not just the Lexmark case In 2001 It's Pekin v. Phelan Which they like a lot Which is from 2007 It's also most recently Justice Mikva Announced this rule in Green for All Energy 2017 LF1-162499 Now Don't be fooled The Country Mutual v. Tickets Now case Is not a leading case Do you know why? It's unpublished And by citing the case Ryerson's violated Supreme Court Rule 23 So it's not a leading case It's imminently distinguishable Because there were there in fact Statements made to the public Within the meaning of the three part Lexmark test But that's not a case that even should find its way Into any of the papers that have been submitted before you Now Here The antitrust conspiracy case Does not allege The Champagne case did not allege Disparagement The two things that are alleged On the face of the complaint That Ryerson points to Are paragraph 21A Where there was some expression of disapproval Of certain mills Of any intent to add champagne as a distributor Again Disapproval is an opinion It is not a misleading Or incorrect statement of fact Paragraph 27 Refers to one of the defendants Stating that champagne is the biggest mistake In the last 30 years Again that is an opinion It is not an untrue statement Now none of the allegations Or excuse me The extrinsic stuff that they would like to bring in Changes the fact They're all matters of opinion But I would like to point out Another important misstatement of the record In Ryerson's reply brief At page 14 It states about the middle of the page Quote And travelers knows that the statement Quote champagne is the biggest mistake In the last 30 years Also was attributed to Ryerson's wily That's simply not true We knew no such thing Because it's not true Take a look at the 10th circuit's decision On summary judgment In the Champagne case 458 Federal 3rd 1078 Take a look at footnote 8 Here's what footnote 8 says Champagne and its filings These are the sealed filings That we couldn't get to That I referred to a moment ago Also pointed to statements by Larry Parsons President of Kenmack metals Not Ryerson Going on to say Mr. Parsons further stated that Champagne metals was the biggest mistake In his career Then if he would have known about Champagne metals it would have been stopped So the true fact is Not that Such a statement was made By somebody at Ryerson Or the travelers knew about it because it wasn't true It was made by a co-defendant Wasn't it wily that Champagne can't meet the distributor's criteria Wouldn't that be a disparaging statement No Not within the meaning of the Lexmark test Your honor That was a matter of His opinion And by the way just so we're clear As I said before that wasn't a matter That was before travelers at any time That was never provided To travelers It was in the sealed Documents Correct and that is a matter of opinion That isn't a matter of Untruth That was a matter of what wily thought Almost all disparaging statements A matter of opinion If I said something that was factually Untrue about something That was demonstrably false Did Champagne meet the distributor's criteria We don't know Whether that's The case or not And Whether they could Or not That was the opinion of Mr. Wily I mean it doesn't It doesn't morph You know for some of the reasons that Judge Mark Mitchell articulated There's another Seventh Circuit case I'll mention in a moment You can't morph A antitrust case Into a Disparagement case by an idle By an idle comment like that And that would not be Even if pled I would submit to your Honor that would not be sufficient To trigger a duty to defect Okay I think we have the Reveyment of where you're at on Champagne Let's move off that beverage and go to Okay and Can I make just one final comment About Champagne Okay Again there have been no Take a look there have been no damages Alleged because of Disparagement in other words causation Is necessary as well and this gets to Justice Paczynski's comment perhaps As well The key causation Allegations of the complaint are paragraphs 23 And 25 the conspiracy Was the result of the Conspiracy was to eliminate Champagne from the Market and other classic antitrust Injuries they weren't disparagement Type of injuries that were alleged And then finally take a look At BASF it's a Seventh Circuit case particularly Look at the language of the Seventh Circuit At 552 F3rd 822 This was actually a case that Mr. Martin Handled for the insured He argued the same thing he's arguing here Essentially that the disparagement Brought an antitrust case Within the scope of coverage The Seventh Circuit had absolutely No problem rejecting that argument And noting that It would they were trying to shoehorn An antitrust case into A general liability policy which Was impermissible for a whole bunch of different Reasons but I'll leave it to you to see What the Seventh Circuit said about that Turning to Hoffman It's undisputed that Travelers Paid everything it possibly could Have owed to Ryerson First of all it defended without A reservation of rights at all times And what does that mean it means That up to its limits of Two million dollars Travelers Was going to do everything That it said it would do in its contract of Insurance one it would defend The truck accident case And it did by hiring Two separate firms the Tressler firm And then Pretzl and Stouffer on appeal Two it would pay Post judgment interest you know Through the time that the The judgment was satisfied Ultimately on appeal And three that it would pay The two million dollar indemnity limit So all told it paid over Six million dollars on this two million dollar Indemnity limit to protect Ryerson Now Ryerson's File to particularly Suggest though that some That it was dilatory in doing that And at some points in time Was actually dishonest In its statements regarding How much of that two million You know they had Committed to Nothing could be further from the truth What Reed first of all This is a very interesting case In this sense if you look at Paragraph 104 of Mr. Martin's Pleading sub parts A through Z He actually attaches a lot of his own Writings okay so we all know the Rule that the Contrary exhibits control Over allegations So he gives you the road map To all of this Justice Lavin The real complaint here Was with AIG okay Going into trial They thought they had twenty seven million Dollars in coverage Coming out of trial They got a reservation of rights from AIG Not from travelers Travelers never did anything But to convey to them What we obligated ourselves to do Through the contract What about your colleague who stood in front of us And said that Ryerson wanted to know what Travelers had offered Travelers said That they had offered the whole thing And AIG said no they haven't Here's the disconnect Okay Travelers committed to It's insured Through the contract And through a statement that we're defending without a reservation It's full limits And what have you And in fact I'll point to a couple places In the record where Mr. Martin Himself acknowledges that They're conflating this idea That What travelers was doing Vis-a-vis AIG Is the same thing as what it was doing Or saying to it's insured So for example There's nothing inconsistent whatsoever To saying you're insured We're obligated to the extent of our policy To protect you in all the ways I described before And then telling AIG No we're not going to give you our two million dollars As well as control of the case For you to do what you wish with it At any point in time Did Ryerson make a specific written demand That travelers tender Or offer To the plaintiffs the two million dollar Limits of policy No Take a look And I'll refer you to several Several particular Exhibits to make it a lot easier That make these points Take a look At Mr. Martin's September 27th 2012 letter where he says Quote At this point Ryerson has The committed two million dollars From travelers without strengths As charters Which is AIG Improperly now Tries to attach That's at C-1335 It's exhibit H to the complaint Well he says that's what you told him But it wasn't true That's his understanding That money again As to Ryerson Did you give him the two million dollars It was always Give who your honor Give who It would only ultimately go to the plaintiff But in terms of tendering it That puts the excess carrier AIG You know on the hook Potentially for you know It could be There are a couple things in play here I want to get back to the fact that Travelers had a right and duty to defend So in addition to Obligating it to pay for defense Council But only offering 250 to settle No The entire two million Was available at all times But never tendered Well tender I'm struggling with The use of the word tender AIG didn't have it in hand No there's no privy Between travelers and AIG So there was still a fight between AIG and travelers About when are they going to get the two million dollars And when are they going to get control of this defense From AIG's perspective Yes Yes now But there was a demand for 17 million dollars So AIG had exposure all the way along the line Absolutely They had exposure And then of course As I said before They interposed the reservation But for the first time after trial Getting back to It was travelers right To defend And they had an interest And it was consistent with Ryerson's interest The interest was In getting Ryerson out of the case And maybe doing something with his agency Ruling on appeal There was some uncertainty about what the law was At that period of time Comes up in trucking cases all the time Absolutely it does And travelers was within their rights To say hey let's test this Think about it this way If It had simply said to AIG Here's our money do what you wish with it It might have settled The issue might not have been appealed And it was certainly within travelers right To test that issue on appeal Now that's not the same thing as saying As Ryerson would That there's an inconsistency Or legal conflict between the two It was just a different strategy The interest were aligned in that Both Ryerson and travelers Would have liked to have seen A not guilty A reversal of the judgment And going forward Both would have an interest In not being found to be an agent You know Ryerson Or similarly situated insurance Not to be an agent merely by the fact That they supplied the goods that were being hauled So the legal Interests were the same That's different From The strategy They might have thought about it differently But legally they were aligned And they're conflating this notion Of a legal conflict Of the type that we see in Maryland versus Peppers and Nandorf Which arises from a reservation of rights letter Where defense counsel could steer the case None of that happened here None of it happened here This is not We deal with that in our brief And note how much time Mr. Martin Deals with in the reply Like about three sentences He just says we're wrong and he's right We've explained why Mayor Brown's not independent counsel They were coverage counsel And so on and so forth But I urge you to look at the writings And what have you And think about this difference Between Tendering limits to AIG And making Honoring your obligations Under a contract Which is what Travelers was obligated to do And it was not obligated to say AIG, here it is, do what you want with it Let me urge you to wrap up So we can get to rebuttal With that I'll honor your request Travelers respectfully request That both judgments below Be affirmed Thank you so much Thank you Mr. Martin Briefly I'm going to go directly to Your honor's question was Does not meet distributor criteria And asking counsel directly Whether that was under seal And they said yes That's in the summary judgment opinion Of the federal district court And it recounts what happened In discovery The parts that were kept confidential Dealt with competitor information Portions that dealt with disparagement And things of that sort were not sealed So that exact statement by Ryerson In terms of It did not meet distributor criteria Is contained in a publicly available Document Cincinnati Insurance, a Supreme Court decision Says you don't even have to tender To an insurance company The moment an insurance company Finds out that its policyholder has been sued The insurer has the obligation To go, get the complaint Get the relevant pleadings Contact its policyholder Find out the information And find out whether the policyholder wants to defend it The Supreme Court says There isn't this kind of game that insurance companies play And we'll get to the game at the end of the letter Because that's just a shifting of a statutory duty Trying to shift it to Ryerson But it's completely untrue That that statement is under seal It's recounted in a publicly record Publicly available document It's a summary judgment decision in favor of the defendants In the Champaign case And was available with just computer keystrokes To travelers This notion that it's opinion Or somehow we don't know Whether it's true or not true That's a factual issue That's subject to being litigated In the underlying case Your Honor just recently issued an opinion In the Hennessy decision Which I believe was filed in April But then published in October But you made clear that in a coverage case We note that we're not called upon To make a determination regarding Hennessy's liability in the underlying suit Whether its proxemics were actually Defective We're not here to determine whether or not It met criteria But it certainly affected whether sellers would sell to it And in turn whether buyers would buy from it Those damages are there That's what's being alleged That as a result of the statements that are being made That sellers wouldn't sell and buyers wouldn't buy Those are expressed And those are the damages we're talking about There's this notion about CONSTAT We've addressed this multiple times CONSTAT does not say That an insurer's duty to defend Is decided only with what's submitted At the time of tender And a police officer doesn't even have to tender If an insurance company becomes aware of a complaint It has an obligation to investigate And obtain the information CONSTAT, all that CONSTAT said And let me find it so I can make sure I quote this directly There's an original verified complaint That said that the underlying plaintiff The defendant did not have permission It was a verified complaint And therefore was considered binding The court said it doesn't matter An insurance company doesn't have to keep up to date Whether or not that allegation was then dropped From an amendment pleading Because it remained binding It didn't say that There's not a single Illinois case That says an insurer's duty to defend Is only determined by what The policyholder submits at the time of tender And if you look at all the cases That go into extrinsic evidence And matters outside the complaint And there's a litany of them That go back decades All kinds of things are considered And even things that develop in the underlying case After the original complaint They couldn't have been there He says they have no duty to investigate They do, there's a statutory duty In section one We cited in our brief They're under a statutory obligation Not to deny without conducting A reasonable investigation In all available evidence And certainly a reasonable investigation Would mean consistent with the Cincinnati Insurance Supreme Court decision That you go to the docket And you obtain the information That summary judgment decision That quotes the criteria That wasn't concealed, that was under seal Travelers had the ability to get that You're sitting at your desk You go to Pacer You punch in a couple key Computer key numbers and you're in And you get that information It's their obligation to do it The statutory site is 5 2015 ICLS 5-154.6 Insurance companies Not to deny coverage Without conducting a reasonable investigation Based on all available information I probably skipped a hint Hoffman Can I address just one other thing This is one thing that really I find disconcerting The June 28, 2004 letter Was a denial It wasn't contacting Ryerson saying We need more information We need to talk to you This is a thing that insurance companies do To try to shift their claims handling obligation Under statute to policyholders Saying if you got anything else Well when you deny you breach When you breach you repudiate the contract There's no more corresponding obligation for Ryerson To do anything So had they contacted Ryerson And said before they issue a denial We're uncertain here, we're unclear Is there something else We want to talk to you, please send us No, this was a denial So you don't end your denial by saying Send us something else That's already breach and repudiation Oh There's a misstatement As to Lexmark This is on page 7 of our brief And this is a quote from Lexmark It says Lexmark never says Negative or misleading This is the quote Disparagement has defined as words Which criticize the quality of one's services The line we draw is the same That separates Winklevoss II From Winklevoss Consultants Inc V Federal Called III Winklevoss II did not have Allegations of any statements As to the Made about the underlying plaintiff Winklevoss III brought them in No duty to defend in Winklevoss II Duty to defend in Winklevoss III But here's what the court says It's saying it drew the same line That distinguished Winklevoss II From Winklevoss III and Lexmark There is nothing in the complaint To suggest that defendants Said anything at all About the plaintiff Let alone anything Negative or misleading So that's the exact language Out of Lexmark Negative or misleading Words which criticize Turning to Hoffman It's funny that They're trying to hide Behind saying We didn't issue a reservation Of rights When they didn't tender Your honor asked the question Specifically did you commit Well yes the letter says exactly We committed our amounts But I'm having difficulty Whether I said the word tender Your honor asked whether we requested We didn't have to request it Because they told us they did it That's part of the deception That they had put this money up And that AIG was the obstruction And we were being lied to And so we're chasing after AIG And we finally get them to come To Ryerson's office We get the claims handler and coverage counsel And they say no They haven't tendered Immediately after that meeting Which travelers were supposed to attend Face to face in person Which they did not The call was made And travelers again denied it And said that it had put up Its two million in limits So that's just straight out Deception And the fact that they concealed You know you look at the cases Nandorf is the independent monitoring When they sit here and conceal Had they told us We want to defend this Because we have concerns About our agency book of business And that's what's driving this At least they could have said They made a disclosure to us But that was all hidden And this going back and forth With AIG Where AIG is asking them to put up the money And they won't do it They don't tell us that Look for one communication If they weren't being deceitful Look for one communication Where travelers tell us No we are not tendering our limits To AIG It doesn't exist Because it was nothing but A continuous deception And misleading of Ryerson Thank you your honors Thanks for the briefs and the argument They were both lengthy And passionate We will take everything under advisement And issue an opinion forthwith Thank you very much